UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Seui Cavan,

                    Plaintiff,                          Case No. 20-cv-1072 (KMM/LIB)

        v.

                                               **REPORT AND RECOMMENDATION**

United States of America, et al.,

                    Defendants.


This matter comes before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of 28 U.S.C. § 636, and upon Defendants' Motion to Dismiss. [Docket No. 63].  The Court took Defendants' Motion under advisement on the parties' written submissions. (Order, [Docket No. 76]).

For the reasons discussed herein, the Court recommends that Defendants' Motion to Dismiss, [Docket No. 63], be **GRANTED**.

I.      **Relevant Procedural History and Factual Background**

Plaintiff Seui Cavan (hereinafter "Plaintiff") initiated the present case on May 1, 2020, by filing a complaint.  (Complaint, [Docket No. 1]).  On December 28, 2020, Plaintiff filed the operative Amended Complaint[1] pursuant to 28 U.S.C. §§ 1331, 1346, 2671-2680, and 18 U.S.C. § 4042(a)(2) alleging that Defendants United States of America, Heidi Voss, Cleveland Swan, Ann

---

[1] For the purposes of the present motion to dismiss under Rule 12(b)(6), the Court accepts the facts alleged in the Amended Complaint as true and construes them in the light most favorable to Plaintiff. See Stodghill v. Wellston Sch. Dist., 512 F.3d 472, 476 (8th Cir. 2008).  Furthermore, Plaintiff has filed a number of exhibits along with his Amended Complaint. (See Amended Compl., [Docket Nos. 20-1, 20-2, 20-3, 20-4, 20-5, 20-6, 20-7, 20-8, 20-9]).  However, it is not the Court's function to sift through Plaintiff's voluminous papers and essentially craft a complaint. See Gurman v. Metro Hous. & Redevelopment Auth., 842 F. Supp. 2d 1151, 1152 (D. Minn. 2011).  Accordingly, the Court exercises its discretion in reviewing only those exhibits specifically incorporated by reference in the Amended Complaint.

LaValley-Wood, Keith Rolhoff, Ricardo Marques, Dr. Peter Bennett, Michael Weber, Megan Shaw, Robert Armstrong, and David McKee violated his constitutional rights in various ways while he was detained at the Federal Correctional Institution in Sandstone, Minnesota ("FCI-Sandstone").[2]  (Amended Complaint, [Docket No. 20], at p. 2; Def.'s Mem., [Docket No. 65], at pp. 1, 11).

Specifically, Plaintiff alleges that, on or about December 2018, Defendants Voss, Swan, Shaw, LaValley-Wood, and Rolhoff caused Plaintiff to work in the laundry department as "retaliatory work punishment" for filing a lawsuit and complaints against several FCI-Sandstone staff, which "further injure[d] [his] spine/nerves, caus[ed] more pain/numbness. . . resulting in weak back/legs," and resulted in an "unsafe environment" because Plaintiff "nearly f[e]ll down." (Amended Complaint, [Docket No. 20], at pp. 5-9).  Plaintiff further alleges that, despite a "medical duty status" providing "[n]o lifting over 20 lbs. indicating a warning of spine injuries," Defendants Weber and Voss also allegedly "inflicted . . . retaliatory work punishment," which reinjured Plaintiff's previous work injury from 2016.  (Id. at p. 12).

Defendants Swan, Shaw, LaValley, Rolhoff, and Voss also allegedly held and participated in "secret meetings" where Plaintiff was "warned not to do anymore compl[ai]nts about [his] spine," and was told that he did not "suffer . . . injuries, pain[,] numbness, weakness, or tiredness,"

_____

[2] A review of the docket sheet in this matter reveals that Defendant Voss's summons was returned unexecuted because she is "no longer employed w/ BOP" and Defendant McKee summons was returned unexecuted because he was "never employed w/ BOP." [Docket Nos. 36, 37]. Accordingly, the present Motion to Dismiss is only brought by the United States of America, Robert Armstrong, Peter Bennett, Ann LaValley-Wood, Ricardo Marques, Keith Rolhoff, Megan Shaw, Cleveland Swan, and Michael Weber in their official and individual capacities.  However, because Plaintiff is proceeding in forma pauperis, the undersigned will review Plaintiff's Amended Complaint as it relates to all of the Defendants. See 28 U.S.C. § 1915(e)(2). When a plaintiff is proceeding in forma pauperis under § 1915 "the court shall dismiss the case at any time if the court determines that the action . . . is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." It is, therefore, this Court's obligation to review Plaintiff's Amended Complaint as asserted against all Defendants. The Court also notes that, to the extent the individual Defendants' names are spelled differently from the names provided by Plaintiff in the Amended Complaint, the Court has corrected the names as reflected in their waivers of service.

even after Plaintiff told them he had "a disc bulge/canal stenosis," "arthritis," and suffers from "a possible sciatica and spinal stenosis." (Id. at pp. 5-9). Defendant Shaw also purportedly conspired with Defendants Voss and McKee to provide that Plaintiff was "malingering" in an unspecified report. (Id. at p. 10). Their actions, Plaintiff alleges, "prevent[ed Plaintiff] from properly being medically diagnos[ed] with medical treatment" resulting in "ongoing 'chronic pain.'" (Id. at pp. 10-11).

Plaintiff further alleges that Defendants Swan, Shaw, LaValley-Wood, and Voss failed to refer Plaintiff to other medical professionals, such as an orthopedic and neurosurgeon, to get correct medical diagnosis and treatment from spinal stenosis, arthritis, and sciatica stemming from a bulging disc; Defendant Swan inflicted retaliatory work punishment when Plaintiff was made to work on a washer machine resulting in his spine being injured once more; and Defendant Shaw failed to stop Defendant Swan's retaliatory work punishment, despite her knowledge that Plaintiff had "spinal injuries sick-call made during . . . work punishment." (Amended Compl., [Docket No. 20], at p. 13).

Plaintiff then alleges that he suffered an injury to his spine while undergoing an MRI procedure with Defendant Dr. Peter Bennett (the "MRI Incident").[3] (Id. at p. 12). Following the MRI Incident, Plaintiff alleges that Defendant Armstrong failed to examine Plaintiff's injury; Defendants Armstrong, LaValley-Wood, and Voss failed to report the MRI incident "to proper authorities" and failed to "have other medical person[nel] examine [Plaintiff's] injured spine"; and Defendants Swan, Shaw, LaValley-Wood, and Voss "fail[ed] . . . to refer [Plaintiff] to medical person[nel] to have [his] spinal injuries examine[d]." (Id. at p. 13).

---

[3] Plaintiff appears to allege that a prior work injury was exacerbated during or following an MRI procedure conducted by Defendant Dr. Peter Bennett. Plaintiff does not allege that Dr. Bennett punched or hit him. Liberally construing the Amended Complaint and drawing all reasonable inferences in Plaintiff's favor, this allegation is tantamount to medical malpractice.

Plaintiff alleges that although Defendant Rolhoff was aware of Plaintiff's spinal injuries, Defendant Rolhoff told Plaintiff that he had to enforce Swan's "retaliatory work punish[ment]." (Id. at p. 14). Plaintiff further alleges that despite requesting "sick-call" and telling Defendant Rolhoff "repeatedly" that he needed medical attention, Defendant Rolhoff told Plaintiff that he did not believe Plaintiff was injured. (Id.). Defendant Rolhoff thereafter allegedly made "false statement[s] on [an] Incident Report." (Id.).

Lastly, Plaintiff alleges that, on December 21, 2018, Warden Ricardo Marques was aware of Plaintiff's injured spine, but as "retaliatory work punishment" for filing a lawsuit against his staff, Plaintiff was made to sit on a "hard wooden bench . . . 8hr[s]/day [for] 30 days." (Id. at p. 10). Plaintiff alleges that, as a result, he suffered "extreme pain . . . in [his] spine/buttock," "weak back/legs," "buttock rash, and open [sores]," and "almost f[e]ll on [the] prison grounds". (Id. at p. 10). Plaintiff alleges thereafter that he "repeatedly plead[ed] with [Warden Marques] that . . . [the] prolong[ed] sitting was further . . . injuring [his] lower spine, while he sat in LT. Complex," but that Warden Marques would stop by on "a daily basis . . . [and] ask 'Cavan, how's your back?'" (Id. at p. 14).

Plaintiff purports to sue Defendants in their individual and official capacities seeking "money," "economic," compensatory, and punitive damages, as well as acceptance of his administrative remedies. (Id. at p. 4).

Based on the allegations in his Amended Complaint, Plaintiff appears to assert a violation of the Federal Tort Claims Act, a First Amendment retaliation claim, and a violation to his constitutional rights against "deliberate indifference" under the Eighth Amendment. (Id. at p. 3).

On February 23, 2021, the Court directed the U.S. Marshals Service to effect service of process on Defendant United States of America, and Defendants Voss, Swan, LaValley, Rolhoff,

Marques, Dr. Bennett, Weber, Shaw, Armstrong, and McKee in their official and individual capacities. [Docket No. 29]. On March 29, 2021, and May 6, 2021, summonses for Defendants Swan, LaValley, Rolhoff, Marques, Dr. Bennett, Weber, Shaw, and Armstrong were returned executed setting their time to file an answer or otherwise respond to the Amended Complaint to May 10, 2021. [Docket Nos. 34, 35].

On June 23, 2021, Defendants mailed Plaintiff a formal demand for an expert affidavit in support of his claims under the Federal Tort Claims Act by August 22, 2021 (the "June 23rd Letter"). (Tweeten Decl., [Docket No. 68], at ¶ 2, Ex. A).

On June 30, 2021, the Court granted Defendants until August 27, 2021 to file their response to the Amended Complaint. [Docket No. 53]. On August 27, 2021, Defendants filed their present Motion to Dismiss, or in the alternative, Motion for Summary Judgment. [Docket No. 63].

## II.    Defendants' Motion to Dismiss

Defendants' Motion to Dismiss, [Docket No. 63], seeks an Order of this Court dismissing Plaintiff's Amended Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6), or in the alternative, dismissal by summary judgment pursuant to Fed. R. Civ. P. 56. Defendants first argue that Plaintiff's Amended Complaint should be dismissed because Plaintiff's claims under the FTCA against the United States are untimely and lack a supporting affidavit. (Def.'s Mem., [Docket No. 65], at pp. 8-12). Second, Defendants argue that Defendant Bennett is immune from suit as an officer of the United States Public Health Service. (Id. at pp. 12-13). Third, Defendants argue that Plaintiff's Bivens[4] claims against the remaining individual Defendants are either insufficiently pled, not cognizable under Bivens, or fail as a matter of law. (Id. at pp. 13-19).

---

[4] Bivens v. Siv Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

Lastly, Defendants argue that Defendants LaValley-Wood, Marques, Rolhoff, Shaw, and Swan are entitled to qualified immunity.  (Id. at pp. 20-21).

### A.  Standard of Review

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, the non-moving party's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted). The complaint must "state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," but in contrast, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556–67).

"To survive a motion to dismiss, the factual allegations in a complaint, assumed true, must suffice to state a claim to relief that is plausible on its face." Carton v. General Motor Acceptance Corp., 611 F.3d 451, 454 (8th Cir. 2010) (citations and internal quotation marks omitted). In addition to accepting all of the factual allegations in the complaint as true, courts considering a Rule 12(b)(6) motion to dismiss draw all reasonable inferences in the plaintiff's favor, but courts are "not bound to accept as true a legal conclusion couched as a factual allegation." Carton, 611 F.3d at 454 (citations omitted); see Riley v. St. Louis County of Mo., 153 F.3d 627, 629 (8th Cir. 1998); Maki v. Allete, Inc., 383 F.3d 740, 742 (8th Cir. 2004). "While legal conclusions can

provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 664. When courts undertake the "context-specific task" of determining whether a plaintiff's allegations "nudge" its claims against a defendant "across the line from conceivable to plausible," they may disregard legal conclusions that are couched as factual allegations. See Iqbal, 556 U.S. at 678–81. Likewise, a Court need not accept as true wholly conclusory allegations couched as facts. Hanten v. Sch. Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999); see Bediako v. Stein Mart, Inc., 354 F.3d 835, 840 (8th Cir. 2004).

While the Court is required to construe the content within Plaintiff's pleadings liberally as he is proceeding pro se, plaintiff is nevertheless bound by applicable procedural and substantive law. See Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004). "Although pro se pleadings are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law." Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984). Additionally, "[t]hough pro se complaints are to be construed liberally, they still must allege sufficient facts to support the claims advanced." Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004) (internal citations omitted) see, e.g., Dunn v. White, 880 F.2d 1188, 1197 (10th Cir. 1989) (regarding a pro se plaintiff, "we will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been pleaded"); Cunningham v. Ray, 648 F.2d 1185, 1186 (8th Cir. 1981) ("[P]ro se litigants must set [a claim] forth in a manner which, taking the pleaded facts as true, states a claim as a matter of law.").

**B.  Plaintiff's Federal Tort Act Claim**

The Federal Tort Claims Act ("FTCA") provides a limited waiver of sovereign immunity for tort actions against the United States or its agencies.  28 U.S.C. §§ 1346(b), 2671 et seq.  Under the FTCA, a party in federal court can maintain an action against the United States for money

damages arising from "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b). "The government is not liable, however, for '[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.'" Tracor/MBA, Inc. v. United States, 933 F.2d 663, 665 (8th Cir. 1991).

The United States is the only proper defendant in an action asserting a FTCA claim. See, e.g., Knowles v. United States, 91 F.3d 1147, 1150 (8th Cir. 1996); Midland Psychiatric Assocs., Inc. v. United States, 145 F.3d 1000, 1004 (8th Cir. 1998). Therefore, to the extent Plaintiff's brings an FTCA claim against the individual Defendants in their individual and official capacities, they should be dismissed. This leaves for the Court's consideration Plaintiff's FTCA claim against the United States.

Under the FTCA, the "United States shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances," Id. at § 2674, for a "negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." Id. at § 1346(b)(1). To bring an actionable FTCA claim, however, a claimant must show that he has previously exhausted his FTCA administrative remedies. The exhaustion requirement of the FTCA provides as follows:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing.

17 Title 28 U.S.C. § 2675(a); see also Sanders v. United States, supra at 872 ("The timely filing of an administrative claim and exhaustion of administrative remedies are jurisdictional prerequisites to suit under the [FTCA]."). The Eighth Circuit has held the "[p]resentment of an administrative claim is jurisdictional and must be pleaded and proven by the FTCA claimant." Bellecourt v. United States, 994 F.2d 427, 430 (8th Cir. 1993), cert. denied, 510 U.S. 1109 (1994).

Here, Plaintiff has not pleaded that he presented his FTCA claim administratively, and therefore, has failed to exhaust his FTCA administrative remedy. Accordingly, this is sufficient reason alone to deny Plaintiff's FTCA claim.

However, Plaintiff's FTCA claim also fails because it is untimely. Compliance with the FTCA's limitations period "is prerequisite to the district court's jurisdiction over a suit against the United States." T.L. ex rel. Ingram v. United States, 443 F.3d 956, 961 (8th Cir. 2006). Plaintiff filed an administrative claim against Defendant Bennett for the actions described in the Amended Complaint on August 23, 2018. (See Boldt Decl., [Docket No. 67]). Between August 2018 and March 2019, Plaintiff filed five administrative claims. (Id. at ¶ 6). The most recent administrative claim related to the actions set forth in the Amended Complaint was filed on February 19, 2019, and it was denied on April 5, 2019. (Id. at ¶¶ 13-14).

Assuming arguendo that the requests for administrative remedies were valid FTCA claims to the agency, Plaintiff did not file this FTCA action within six months of receiving notice of the BOP's final decision, as required by 28 U.S.C. § 2401(b) (providing that the FTCA bars tort claims against the United States "unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it is

presented").[5]  Further, the Court finds no grounds on the present record for equitable tolling under the circumstances.

Accordingly, to the extent Defendants' Motion to Dismiss, [Docket No. 63], seeks an Order of this Court dismissing Plaintiff's FTCA claim as alleged against the United States, the undersigned recommends that Defendants' Motion to Dismiss, [Docket No. 63], be **GRANTED**. The Court further recommends that Defendants' Motion to Dismiss, [Docket No. 63], be **GRANTED**, with respect to Plaintiff's FTCA claim as alleged against the individual Defendants in their individual and official capacities.

### C.  Plaintiff's <u>Bivens</u> Claims

Plaintiff purports to separately raise a <u>Bivens</u> claim against the United States, as well as, Defendants Armstrong, Dr. Bennett, LaValley-Wood, Marques, McKee, Rolhoff, Shaw, Swan, Voss, and Weber, in their individual and official capacities, alleging that these individually named Defendants subjected Plaintiff to "retaliatory work punishment" and deliberate indifference.

Defendant Dr. Bennett argues that he is absolutely immune from suit as an employee of the U.S. Public Health Services. (Defs.' Mem., [Docket No. 65], at pp. 12-13). Defendants Armstrong and Weber argue that Plaintiff's <u>Bivens</u> action as alleged against them are insufficiently pled.  (Id. at pp. 13-14).  Defendants LaValley-Wood, Marques, Rolhoff, Shaw, and Swan argue

---

[5] Furthermore, even if Plaintiff had pleaded that he exhausted his FTCA administrative remedies and his FTCA claim was timely, because Plaintiff's FTCA claim sounds in medical malpractice and is therefore subject to Minnesota law, the Court would nevertheless recommend dismissal for failure to provide an expert affidavit in compliance with Minn. Stat. § 145.682.  Following Defendants' demand, Plaintiff failed to provide the affidavit <u>required</u> by the statute.  If a plaintiff fails to produce an expert affidavit after a demand has been made, then dismissal becomes mandatory upon motion.  Minn. Stat. § 145.682, subd. 6(a); <u>Broehm v. Mayo Clinic Rochester</u>, 690 N.W.2d 721, 726 (Minn. 2005). Plaintiff's <u>pro se</u> status does not exempt him from this requirement.  <u>See</u> Minn. § 145.682, subd. 5; <u>Wales v. Tran</u>, 08-cv-39 (JNE/JJK), 2008 WL 4867699, at *3 (D. Minn., Nov. 4, 2008).  Without such affidavit, any purported malpractice claim alleged by Plaintiff is barred under § 145.682.  <u>See</u> Minn. Stat. § 145.682, subd. 6; <u>Flores</u>, 689 F.3d at 900; <u>Wales</u>, 2008 WL 4867699, at *3.

that Plaintiff fails to state a claim upon which relief may be granted and that they are entitled to qualified immunity. (Id. at pp. 14-21).

"A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors." Aldaco v. Holder, No. 10-cv-590 (JRT/LIB), 2011 WL 825624, at *3 (D. Minn. Jan. 7, 2011), report and recommendation adopted by 2011 WL 839388 (D. Minn. Mar. 7, 2011) (citing Bivens, 403 U.S. at 395–97). "A Bivens claim allows a plaintiff to bring an action for money damages against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. A plaintiff asserting a claim under Bivens must show the violation of a valid constitutional right by a person acting under color of federal law." Id. at *3. A Bivens claim can only be maintained against a government employee in his individual capacity; Bivens does not authorize claims against government employees in their official capacities. Bivens v. Siv Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388, 396–97 (1971).

### 1. Defendants Are Entitled to Sovereign Immunity Against Plaintiff's Official Capacity Claims

"Sovereign immunity is a jurisdictional doctrine, and the terms of the United States' consent to be sued in any court define that court's jurisdiction to entertain the suit." Brown v. United States, 151 F.3d 800, 803-04 (8th Cir. 1998). As a sovereign power, the United States may be sued only to the extent that it has consented to suit by statute. United States Dept. of Energy v. Ohio, 503 U.S. 607, 615 (1992). Therefore, sovereign immunity holds that the United States, and its agencies and instrumentalities, including the Bureau of Prisons ("BOP"), are immune from suit, unless a waiver of such immunity has been "expressed unequivocally" by Congress. Manypenny v. United States, 948 F.2d 1057, 1063 (8th Cir. 1991).

In the present case, Plaintiff names the United States as a Defendant in his <u>Bivens</u> claims. However, Plaintiff also asserts <u>Bivens</u> claims against the individual Defendants in <u>both</u> their individual and official capacities. A Federal prisoner may bring a <u>Bivens</u> claim against an officer individually, subject to the defense of qualified immunity, but "[t]he prisoner may not bring a <u>Bivens</u> claim against the officer's employer, the United States, or the BOP. . . [because] his only remedy lies against the individual," with respect to the alleged constitutional deprivation. <u>Corr. Servs. Corp. v. Malesko</u>, 534 U.S. 61, 72 (2001). Therefore, the United States is the real party interest in claims brought against the individual Defendants in their official capacities. <u>See Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985).

Accordingly, this Court recommends that Plaintiff's <u>Bivens</u> claims against Defendant United States, as well as, Plaintiff's <u>Bivens</u> claims against the individual Defendants in their official capacities be **DISMISSED** without prejudice for lack of subject matter jurisdiction.

Having recommended dismissal of Plaintiff's <u>Bivens</u> claims against the United States and the individual Defendants in their official capacity, the Court will next address Plaintiff's <u>Bivens</u> claims against the Defendants in their individual capacity.

### 2. Defendant Dr. Bennett is Entitled to Absolute Immunity Against Plaintiff's Individual Capacity Claim

Liberally construed, Plaintiff appears to allege that he suffered an injury to his spine during or following an MRI procedure with Defendant Dr. Peter Bennett (the "MRI Incident"). (Amended Compl., [Docket No. 20], at p. 12. In response, Defendants assert that Defendant Dr. Bennett is a commissioned officer with the U.S. Public Health Services (hereinafter "PHS"), and therefore, Defendant Dr. Bennett has absolute immunity from liability in the present action. (Defs.' Mem., [Docket No. 68], at pp. 12-13).

In <u>Hui v. Castaneda</u>, 599 U.S. 799 (2010), the U.S. Supreme Court, reversing the denial of a motion to dismiss, held that PHS employees are immune from <u>Bivens</u> claims arising from the performance of their job-related medical duties. The Court explained that:

> This case presents the question whether 42 U.S.C. § 233(a) . . . precludes an action under <u>Bivens</u>, . . . against U.S. Public Health Service (PHS) personnel for constitutional violations arising out of their official duties. When federal employees are sued for damages for harms caused in the course of their employment, the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671–2680, generally authorizes substitution of the United States as the defendant. Section 233(a) makes the FTCA remedy against the United States 'exclusive of any other civil action or proceeding' for any personal injury caused by a PHS officer or employee performing a medical or related function 'while acting within the scope of his office or employment.' Based on the plain language of § 233(a), we conclude that PHS officers and employees are not personally subject to <u>Bivens</u> actions for harms arising out of such conduct.

<u>Id.</u> at 801-02; <u>see</u> <u>Bransgaard v. U.S. Bureau of Prisons Health Service Staff</u>, No. 5:11-CT-3122-FL, 2012 WL 3732822 at *7 (E.D.N.C. 2012) (providing that 42 U.S.C. § 233(a) "protects commissioned Public Health Service officers and employees from being subject to suit 'for damage for personal injury . . . resulting from the performance of medical, surgical, dental, or related functions'") (quoting <u>Hui</u>, 599 U.S. at 805).

Here, Defendant Dr. Bennett filed a sworn declaration along with Defendants' Motion to Dismiss. (Bennett Decl., [Docket No. 66]). That declaration provides that Defendant Dr. Bennett has been a commissioned officer in the PHS since August 1992, and that he has been stationed at FCI-Sandstone since 2003. (<u>Id.</u>). That declaration further provides that, at all times relevant to the present action, all of Defendant Dr. Bennett's "actions with regard to Plaintiff were done in the performance of a medical or related function within the course and scope of [his PHS] employment." (<u>Id.</u>).

Plaintiff's factual allegations in his Amended Complaint appear to <u>only</u> involve Defendant Dr. Bennett's conduct related to Plaintiff undergoing an MRI. Those allegations provide no factual

13

basis upon which this Court could reasonably infer that Defendant Dr. Bennett was taking any actions other than performing a medical function in the course and scope of his PHS employment.

Accordingly, even assuming solely for the sake of argument that Plaintiff's allegations of deliberate indifference regarding Defendant Dr. Bennett were true, Defendant Dr. Bennett, as a commissioned officer of the PHS, is entitled in his individual capacity to absolute immunity from Plaintiff's Bivens claim pursuant to § 233(a) because, based on the allegations in the Amended Complaint, Defendant Dr. Bennett is being sued based upon his performance of a medical function within the course and scope of his PHS medical duties and employment.

Therefore, to the extent Defendants' Motion to Dismiss seeks an Order of this Court dismissing Plaintiff's Bivens claim as alleged individually against Defendant Dr. Bennett in his individual capacity, the Court recommends that Defendants' Motion to Dismiss, [Docket No. 63], be **GRANTED**, and that the individual Bivens claim against Defendant Dr. Bennett be **DISMISSED** without prejudice.

### 3. Plaintiff's "Work Retaliatory Punishment" Claim Against Armstrong, LaValley-Wood, Marques, McKee, Rohloff, Swan, Shaw, Weber, and Voss

Plaintiff alleges that Defendants Armstrong, LaValley-Wood, Marques, McKee, Rohloff, Swan, Shaw, Weber, and Voss retaliated against Plaintiff for filing an earlier lawsuit and lodging complaints against other FCI-Sandstone staff by making him work in the laundry department.

The U.S. Supreme Court's decision in Bivens "established that the victims of a constitutional violation by a federal agent have a right to recover damages against [that] official in federal court despite the absence of any statute conferring such a right." Carlson v. Green, 446 U.S. 14, 18 (1980). In recent years, however, the U.S. Supreme Court has made clear that the cause of action established by Bivens does not extend to all claims of constitutional violations. See, e.g., Hernandez v. Mesa, 140 S. Ct. 735 (2020) (discussing the very narrow acceptance of

newly recognized categories of Bivens claims); Ziglar v. Abbasi, 137 S. Ct. 1843 (2017) (same). The U.S. Supreme Court has previously recognized under Bivens claims brought for excessive force in violation of the Fourth Amendment, see Bivens, 403 U.S. at 388; workplace discrimination in violation of the Fifth Amendment, see Davis v. Passman, 442 U.S. 228 (1979); and deliberate indifference to a serious medical need in violation of the Eighth Amendment. See Carlson, 446 U.S. at 14. Recently, in Ziglar, the U.S. Supreme Court went to great lengths to emphasize that it had not expanded this limited scope of claims available under Bivens in 30 years, and that any circumstance that warranted further expansion at this juncture would be rare. Ziglar, 137 S. Ct. at 1857.

"Determining whether an implied cause of action is available under Bivens involves two steps." Farah v. Weyker, 926 F.3d 492, 498 (8th Cir. 2019). "First, we must determine whether the cases before us present one of 'the three Bivens claims the Court has approved in the past' or whether, instead, allowing the plaintiffs to sue would require us to extend Bivens to a 'new context.'" Id. (quoting Ziglar, 137 S. Ct. at 1857).

"If there is a previously recognized Bivens claim alleged, then the cases may proceed. If not, then we advance to the second step and ask whether any 'special factors counsel[ ] hesitation' before implying a new cause of action 'in the absence of affirmative action by Congress.'" Farah, 926 F.3d at 498 (quoting Ziglar, 137 S. Ct. at 1857). "Only if we are confident that 'the Judiciary is well suited . . . to consider and weigh the costs and benefits of allowing a damages action' will we take it upon ourselves to do so. Otherwise, we will leave the balancing to Congress." Id. (alteration in original) (quoting Ziglar, 137 S. Ct. at 1858).

Here, Plaintiff alleges that, despite being on "medical duty status" and suffering from back impairments and arthritis, Armstrong, LaValley-Wood, Marques, McKee, Rohloff, Swan, Shaw,

Weber, and Voss made Plaintiff work in the laundry department as "retaliatory work punishment" for filing an earlier lawsuit and lodging complaints against other FCI-Sandstone staff.  Liberally construed, it appears that Plaintiff is alleging a First Amendment retaliation claim.

However, this is not a <u>Bivens</u> claim that has been approved by the U.S. Supreme Court in the past.  Indeed, the U.S. Supreme Court has never recognized a <u>Bivens</u> remedy for First Amendment claims, and it has affirmatively declined to extend <u>Bivens</u> to a claim invoking the First Amendment.  <u>Brown v. Cooper</u>, No. 18-219 (DSD/BRT), 2018 WL 6977594, at *12 (D. Minn. Dec. 11, 2018), report and recommendation adopted by 2019 WL 121943 (D. Minn. Jan. 7, 2019), aff'd, 787 F. App'x 366 (8th Cir. 2019); <u>see</u> <u>also</u> <u>Ziglar</u>, 137 S. Ct. at 1857 (providing examples of cases where the Court has declined to recognize Bivens claims); <u>Reichle v. Howards</u>, 566 U.S. 658, 663 n.4 (2012) (noting that the U.S. Supreme Court "ha[s] never held that <u>Bivens</u> extends to First Amendment Claims"); <u>Davila v. United States</u>, 2020 WL 7060279, at *6 (D. Minn. Sept. 24, 2020), report and recommendation adopted sub nom. <u>Davila v. United States O/I Cap</u>, No. CV 20-150 (JRT/LIB), 2020 WL 7055571 (D. Minn. Dec. 2, 2020).

Accordingly, this Court must proceed to the second step and determine "whether any 'special factors counsel[ ] hesitation' before implying a new cause of action 'in the absence of affirmative action by Congress.'"  <u>Farah</u>, 926 F.3d at 498 (quoting <u>Ziglar</u>, 137 S. Ct. at 1859).  "[R]ecognizing the [U.S. Supreme] Court's 'caution' in this regard, [the Eighth Circuit] ha[s] adopted a 'presumption against judicial recognition of direct action for violations of the Constitution by federal officials.'"  <u>Id.</u> at 500 (quoting <u>Neb. Beer, Ltd. v. Greening</u>, 398 F.3d 1080, 1084 (8th Cir. 2005)).

Here, this Court finds that there are special factors that counsel hesitation before extending <u>Bivens</u> under the present circumstances.  Plaintiff's retaliation claim implicates BOP

policies regarding grievances, medical treatment, disciplinary proceedings, and inmate transfer. See Brown, 2018 WL 6977594, at *13. "BOP officials faced with the expanded possibility of personal liability may act differently with respect to these issues when dealing with inmates in BOP custody," and "[a]s explained in Ziglar, Courts should consider defense costs created by claims against federal officials, Congress' 'substantial responsibility to determine whether, and the extent to which, monetary and other liabilities should be imposed upon individual officers and employees of the Federal Government,' and 'the time and administrative costs attendant upon intrusions resulting from the discovery and trial process.'" Id. (quoting Ziglar, 137 S. Ct. at 1856). Moreover, "Congress . . . passed the [Prisoner Litigation Reform Act] to reduce the number of frivolous prisoner lawsuits," and its "restrictive provisions with respect to prisoner litigation are a special factor counseling hesitation when deciding whether to create a new cause of action for prisoners." Id.

Therefore, this Court finds that Bivens should not be extended to Plaintiff's work retaliatory punishment claim. See, e.g., Davila, 2020 WL 7060279, at *6 (declining to extend Bivens to a claim that the plaintiff had been retaliated against "for filing administrative remedy grievances in violation of the First Amendment" while at FMC Rochester).

Accordingly, to the extent Defendants' Motion to Dismiss seeks an Order of this Court dismissing Plaintiff's Bivens claims of "retaliatory work punishment" as alleged individually against Defendants Armstrong, LaValley-Wood, Marques, McKee, Swan, Shaw, Rohloff, Weber, and Voss, in their individual capacities, the Court recommends that Defendants' Motion to Dismiss, [Docket No. 63], be **GRANTED**, and that the purported Bivens claim of "retaliatory work punishment" against Defendants Armstrong, LaValley-Wood, Marques, McKee, Swan, Shaw, Rohloff, Weber, and Voss in their individual capacities be **DISMISSED** without prejudice.

### 4. Plaintiff's Deliberate Indifference Claims Against Armstrong, LaValley-Wood, Marques, McKee, Rohloff, Swan, Shaw, Weber, and Voss

Plaintiff purports to bring two deliberate indifference claims under <u>Bivens</u>. The first purported "deliberate indifference" claim generically alleges that, in their individual capacities, Defendants Armstrong, LaValley-Wood, Marques, McKee, Swan, Shaw, Weber, and Voss prevented him from, among other things, obtaining medical treatment that he deemed "proper." The second deliberate indifference claim is liberally construed against Defendant Rohloff in his individual capacity.

Defendants argue that Plaintiff's deliberate indifference claims against the individual Defendants are not cognizable under <u>Bivens</u>. (Defs.' Mem., [Docket No. 65], at pp. 14-17). In support, Defendants contend that none of Plaintiff's alleged constitutional claims in this case mirror the three cases wherein the United States Supreme Court implied a cause of action under <u>Bivens</u>. The Court agrees.

As noted above, the U.S. Supreme Court has previously recognized a <u>Bivens</u> claim for deliberate indifference to a serious medical need—specifically, a failure to provide medical care—in violation of the Eighth Amendment. <u>See</u> <u>Carlson</u>, 446 U.S. at 14. But "[d]etermining whether an implied cause of action is available under <u>Bivens</u> involves two steps": 1) the Court must "determine whether the cases before [it] . . . are one of 'the three <u>Bivens</u> claims the Court has approved in the past'"; or 2) whether, instead, allowing Plaintiff to sue would require the Court to extend <u>Bivens</u> to a "'new context.'" <u>Farah v. Weyker</u>, 926 F.3d 492, 498 (8th Cir. 2019) (quoting <u>Ziglar</u>, 137 S. Ct. at 1857). A context is regarded "as 'new' if it is 'different in a meaningful way from previous <u>Bivens</u> cases decided by [the U.S. Supreme] Court.'" <u>Hernandez</u>, 140 S. Ct. at 735 (quoting <u>Ziglar</u>, 137 S. Ct. at 1859).

In *Ziglar*, the U.S. Supreme Court provided "some examples [that] might prove instructive":

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Ziglar*, 137 S. Ct. at 1859-60.

> i. *Defendants Armstrong, LaValley-Wood, Marques, McKee, Swan, Shaw, Weber, and Voss*

Plaintiff brings a sweeping "deliberate indifference" claim against Defendants Armstrong, LaValley-Wood, Marques, McKee, Swan, Shaw, Weber, and Voss appearing to disagree with the medical treatment he did receive, as well as, disagreeing with a particular work assignment and having to sit on a bench. Specifically, Plaintiff first alleges that, despite Defendant Weber being aware that Plaintiff was on "medical duty status," and despite informing Defendants Swan, Shaw, and LaValley-Wood that he had "a disc bulge/canal stenosis," "arthritis," and suffered from "a possible sciatica and spinal stenosis," Plaintiff was nevertheless made to work in the laundry department. Plaintiff next alleges that Defendants Swan, Shaw, LaValley-Wood, and Voss failed to refer Plaintiff to a specialist and other medical professionals, such as an orthopedist and neurosurgeon, to get correct medical diagnosis and treatment for his ailments. Plaintiff also alleges that Defendant Armstrong failed to report the MRI Incident to "proper authorities" and failed to have medical staff examine Plaintiff's injured spine following the MRI Incident. Lastly, Plaintiff alleges that Defendant Marques had Plaintiff sit on a hard wooden bench, despite knowing that Plaintiff was injured and could potentially be re-injured.

However, Plaintiff's purported "deliberate indifference" claims do not allege a failure to provide medical care.  Indeed, Plaintiff's purported "deliberate indifference" claims are different in a meaningful way from the claims alleged in <u>Carlson</u>, 446 U.S. 14—the only case where the U.S. Supreme Court found an implied <u>Bivens</u> action for a claim of deliberate indifference.  In <u>Carlson</u>, prison officials were alleged to have been deliberately indifferent to the prisoner's serious medical needs when, being aware of the prisoner's chronic asthmatic condition, prison officials, among other things, kept the prisoner in the facility against the advice of doctors, failed to give him competent medical attention after he suffered an asthmatic attack, and delayed for too long a time his transfer to an outside hospital.  <u>Id.</u> at 16 n. 1.  The claims in this case relate to receiving a particular work assignment and an alleged disagreement over what constitutes "proper" treatment and diagnosis—Plaintiff does not allege that he was denied any medical care altogether to address a present, severe medical crisis.

Therefore, because the Court finds that Plaintiff's purported "deliberate indifference" claims arise in a "new context," there is no <u>Bivens</u> remedy for his claims against Defendants Armstrong, LaValley-Wood, Marques, McKee, Swan, Shaw, Weber, and Voss named in their individual capacities.  <u>See</u> <u>Abbasi</u>, 137 S. Ct. at 1864 ("even a modest extension is still an extension."); <u>Hernandez v. Mesa</u>, 140 S. Ct. 735, 743 (2020) (stating that the U.S. Supreme Court's "understanding of a 'new context' is broad.").  <u>See e.g.</u>, <u>Ziglar</u>, 137 S. Ct. at 1848 (holding that there is no <u>Bivens</u> action recognized for any conditions of confinement claims); <u>Schweiker v. Chilicky</u>, 487 U.S. 412 (1988) (no <u>Bivens</u> cause of action for an improper denial of disability benefits allegedly resulting from due process violations in administration of continuing disability review program); <u>Schwarz v. Meinberg</u>, 761 F. App'x 732 (9th Cir. 2019) (holding no <u>Bivens</u> cause of action for First Amendment, Fifth Amendment, and Eighth Amendment claim regarding

unsanitary cell conditions); Williams v. Lynch, 2018 WL 4140667, at *4 (D.S.C. Aug. 30, 2018) (holding there is no Bivens remedy for claims of "retaliation, denial of access to courts, [and] unconstitutional conditions of confinement under the First, Fifth, and Eighth Amendments").

Even assuming, arguendo, that Plaintiff's purported "deliberate indifference" claim against Defendants Armstrong, LaValley-Wood, Marques, McKee, Swan, Shaw, Weber, and Voss are cognizable under Bivens, the Court nevertheless finds that these claims have not been plausibly pled.

As provided, supra, Plaintiff's Amended Complaint must "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," but in contrast, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556-67). "To survive a motion to dismiss, the factual allegations in a complaint, assumed true, must suffice to state a claim to relief that is plausible on its face." Carton, 611 F.3d at 454. Further, a Court need not accept as true wholly conclusory allegations couched as facts. Hanten, 183 F.3d at 805. Moreover, while the Court is required to construe the content within Plaintiff's pleadings liberally as he is proceeding pro se, plaintiff is nevertheless bound by applicable procedural and substantive law. See Stone, 364 F.3d at 914.

Plaintiff's generalized allegations that he had to work in the laundry department does not show that Defendant Armstrong, LaValley-Wood, Marques, McKee, Swan, Shaw, Weber, and Voss deliberately disregarded Plaintiff's back impairments and arthritis. First, the fact that Plaintiff was required to work in and of itself does not raise a constitutional claim for deliberate

indifference. See Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993). Second, while "[i]n the work assignment context, prison officials are deliberately indifferent when they knowingly compel convicts to perform physical labor which is beyond their strength, or which constitutes a danger to their health, or which is unduly painful," Zahn v. Nygaard, 989 F.3d 1070, 1073 (8th Cir. 2021) (citing Choate v. Lockhart, 7 F.3d 1370, 1374 (8th Cir. 1993), there is nothing alleged in the present pleadings to indicate that working in the laundry department would endanger Plaintiff's life or health; or that the work Plaintiff completed in the laundry department was beyond Plaintiff's physical capacity.

Plaintiff also does not explain what is meant by being on "medical duty status" and the details of any restrictions thereof. See e.g., Houston v. Rogers, No. 5:13-CV-2638-P, 2014 WL 463060, at *4 (W.D. La. Feb. 5, 2014) (dismissing pro se complaint where plaintiff did not demonstrate facts sufficient to establish deliberate indifference where he was given "Regular Duty Status" with restrictions but nothing of record indicated that those restrictions were violated). Indeed, Plaintiff does not even allege the specific work he was directed to do in the laundry department. Nor does he plausibly allege that the individual Defendants knew of Plaintiff's medical conditions and knew that assigning him to work in the laundry department would aggravate these conditions. See Vazquez v. Nagel, No. 10-4217 JNE/TNL, 2012 WL 1593199, at *12 (D. Minn. Feb. 13, 2012) (dismissing deliberate indifference claim where the plaintiff fails to allege that the defendant officers knew of the plaintiff's knee and ankle conditions or that food service duty would aggravate these conditions at the time of assignment).

Plaintiff further generally alleges that "their actions" caused him "chronic pain," however, Plaintiff's vague allegations do not plausibly demonstrate that Defendants Armstrong, LaValley-Wood, Marques, McKee, Swan, Shaw, Weber, and Voss had actual knowledge that Plaintiff was

being deprived of medical treatment. <u>Davila</u>, 2020 WL 7060279, at *13; <u>see also</u> <u>Hall v. Ramsey</u> <u>County</u>, No. 12-1915 (DSD/LIB), 2014 WL 4055368, at *5 (D. Minn. Aug. 14, 2014) ("Such generalized arguments are insufficient to show a detrimental effect from the delay."). Plaintiff does not allege that Defendants were medical personnel, nor does Plaintiff raise any factual allegations from which it can be inferred that they were directly involved in any decisions related to the treatment of his back impairments provided by BOP medical personnel. <u>See</u>, <u>Id.</u> (finding that the plaintiff's claims of deliberate indifference of not providing him with surgery on his broken finger does not allege personal involvement where defendant officers were non-medical personnel and were not involved in the plaintiff's treatment); <u>see e.g.</u>, <u>Holden v. Hirner</u>, 663 F.3d 336, 343 (8th Cir. 2011) ("[p]rison officials lacking medical expertise are entitled to rely on the opinions of medical staff regarding inmate diagnosis and the decision of whether to refer the inmate to outside doctors or dentists."); <u>Webb v. Hedrick</u>, 409 F. App'x 33, 36 (8th Cir. 2010) ("As a non-medical professional, [the warden] is not personally liable for his medical staff's treatment decisions. As such, Plaintiff has failed to state a claim against these Defendants.").

To the extent Plaintiff alleges that Defendants Swan, Shaw,[6] and LaValley-Wood failed to refer Plaintiff to other, additional medical specialists, which prevented Plaintiff from obtaining the "proper" treatment and diagnoses for spinal stenosis, arthritis, and sciatica stemming from bulging disc, Plaintiff does not plausibly allege that they intentionally denied or delayed access to medical care or intentionally interfered with prescribed treatment. <u>See</u> <u>Estelle</u>, 429 U.S. at 104-05. Further, a prisoner's desire to have a different type of treatment, a different course of treatment, or an

---

[6] Plaintiff's generalized, singular allegation that Defendant Shaw conspired with others (possibly Defendants Voss and McKee) to provide on an unspecified report that he was "malingering" is insufficient to state a claim. <u>Cf.</u> <u>Bell</u> <u>Atl. Corp. v. Twombly</u>, 550 U.S. 544, 557 (2007) (stating that "parallel conduct does not suggest [a] conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality"). Plaintiff also has not alleged any facts to suggest plausibly a meeting of the minds among the Defendants or that any Defendant acted in furtherance of the alleged conspiracy.

institution's failure to refer an inmate to a specialist of his choice does not establish deliberate indifference. Logan v. Clarke, 119 F.3d 647, 650 (8th Cir. 1997) (stating that failing to refer an inmate to a specialist is merely a factor to consider in the deliberate indifference determination).

As for Defendant Armstrong, Plaintiff alleges that he failed to examine Plaintiff's injuries following the MRI Incident; failed to report his alleged injuries to "proper authorities"; and failed to have medical staff examine Plaintiff's alleged injuries. However, these generalized and conclusory allegations are insufficient to establish deliberate indifference. "[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997). "As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment." Id.

Here, Plaintiff fails to plead that Defendant Armstrong actually knew of some serious medical need Plaintiff suffered and deliberately disregarded it. See Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000); Baez v. Rosemack, No. 9-cv-2121 (RHK/LIB), 2011 WL 4062586, at *13 (D. Minn. Aug. 9, 2011), report and recommendation adopted, 2011 WL 4067466 (D. Minn. Sept. 13, 2011), aff'd, 471 F. App'x 544 (8th Cir. 2012). Further, Plaintiff's allegations concerning Defendant Armstrong and the medical attention Plaintiff did or did not receive following the MRI Incident are conclusory and do not state with any degree of specificity how Defendant Armstrong disregarded a known medical need. See McRaven v. Sanders, 577 F.3d 974, 982 (8th Cir. 2009) ("The plaintiff-inmate must clear a substantial evidentiary threshold to show that the prison's medical staff deliberately disregarded the inmate's needs by administering an inadequate

treatment."). Moreover, Plaintiff does not provide an assertion on how the alleged failure to report the MRI Incident resulted in a violation of Plaintiff's Eighth Amendment rights to be free from cruel and unusual punishment, denied Plaintiff humane conditions of confinement, or was an excessive risk to Plaintiff's health or safety.

Lastly, Plaintiff alleges that Defendant Marques ignored Plaintiff's complaints that sitting on the hard wooden bench was re-injuring his lower spine. However, Plaintiff does not allege that the Defendant Marques denied, delayed, or refused him treatment. See Vaughan v. Lacey, 49 F.3d 1344, 1346 (8th Cir.1995) (no deliberate indifference where prison officials did not intentionally deny or delay access to medical care).

Accordingly, to the extent Defendants' Motion to Dismiss seeks an Order of this Court dismissing Plaintiff's Bivens claim of generalized deliberate indifference claims as alleged individually against Defendants Armstrong, LaValley-Wood, Marques, McKee, Swan, Shaw, Weber, and Voss, in their individual capacities, the Court recommends that Defendants' Motion to Dismiss, [Docket No. 63], be **GRANTED**, and that the individual Bivens claims of deliberate indifference against Defendants Armstrong, LaValley-Wood, Marques, McKee, Swan, Shaw, Weber, and Voss be **DISMISSED** without prejudice.

Having recommended dismissal of Plaintiff's generalized deliberate indifference claim as alleged against Defendants Armstrong, LaValley-Wood, Marques, McKee, Swan, Shaw, Weber, and Voss, in their individual capacities, the Court will next address a deliberate indifference claim as alleged against the only remaining defendant in his individual capacity—Defendant Rohloff.

### ii.    *Defendant Rohloff*

Liberally construing the Amended Complaint, Plaintiff appears to allege a separate deliberate indifference to medical needs claim against Defendant Rolhoff. Specifically, Plaintiff

alleges that, despite being aware of Plaintiff's spinal injuries sustained from the MRI Incident, Plaintiff told Defendant Rolhoff that he needed medical attention. In response, Defendant Rolhoff allegedly told Plaintiff that he did not believe Plaintiff was injured.

As noted above, the U.S. Supreme Court has previously recognized a <u>Bivens</u> claim for deliberate indifference to a serious medical need in violation of the Eighth Amendment. <u>See</u> <u>Carlson</u>, 446 U.S. at 14. Therefore, the Court finds that a <u>Bivens</u> cause of action is available for Plaintiff's deliberate indifference to medical needs claims against Defendant Rolhoff. <u>See Farah</u>, 926 F.3d at 498.

The Eighth Amendment to the United States Constitution prohibits the government from inflicting "cruel and unusual punishment" on persons convicted of crimes. <u>See</u> <u>Rhodes v.</u> <u>Chapman</u>, 425 U.S. 337, 344-46 (1981). Any "deliberate indifference to serious medical needs of prisoners" constitutes cruel and unusual punishment, and therefore, violates the Eighth Amendment "because it constitutes the unnecessary and wanton infliction of pain contrary to contemporary standards of decency." <u>Helling v. McKinney</u>, 509 U.S. 25, 32 (1993) (internal quotations and citation omitted); <u>see also</u> <u>Gregoire v. Class</u>, 236 F.3d 413, 417 (8th Cir. 2000) ("It is well established that the Eighth Amendment prohibition on cruel and unusual punishment extends to protect prisoners from deliberate indifference from serious medical needs.") (citing <u>Estelle</u>, 429 U.S. at 104).

"Whether an official was deliberately indifferent requires both an objective and a subjective analysis." <u>Jackson v. Buckman</u>, 756 F.3d 1060, 1065 (8th Cir. 2014). To demonstrate the "deliberate indifference" necessary for pleading an Eighth Amendment violation, a prisoner must show: (1) that he had an objectively severe medical need; and (2) that prison officials subjectively knew of, but deliberately disregarded, that need. <u>Id.</u>; <u>accord</u> <u>Jolly</u>, 205 F.3d at 1096.

"A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Holden, 663 F.3d at 342 (quoting Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997)). "When the inmate alleges that a delay in medical treatment rises to the level of an Eighth Amendment violation, 'the objective seriousness of the deprivation should also be measured "by reference to the effect of delay in treatment."'" Laughlin v. Shriro, 430 F.3d 927, 929 (8th Cir. 2005) (emphasis in original).

"Deliberate indifference is akin to criminal recklessness." Drake v. Koss, 445 F.3d 1038, 1042 (8th Cir. 2006). Accordingly, a plaintiff must plead "more than negligence, more even than gross negligence." Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995); see also Flores v. United States, 689 F.3d 894, 903 (8th Cir. 2012) (quoting Holden, 663 F.3d at 341) ("Deliberate indifference includes something more than negligence but less than actual intent to harm, it requires proof of a reckless disregard of the known risk."). "Specifically, the prisoner must show both (1) that a prison official had actual knowledge that the prisoner's medical condition created a substantial risk of serious harm to the prisoner's health, and (2) that the prison official failed to act reasonably to abate that risk." Baez, 2011 WL 4062586, at *4 (citing Coleman, 114 F.3d at 785).

Here, Plaintiff claims that Defendant Rolhoff was deliberately indifferent to his medical needs because he did not provide Plaintiff with treatment for spinal injuries following the MRI Incident. (See Amended Compl., [Docket No. 20]). A review of the administrative claims filed by Plaintiff provided that the MRI Incident may have occurred on two different incident dates— either on August 22, 2017, or February 18, 2018. (Boldt Decl., [Docket No. 67], at ¶ 7). However, regardless of the MRI Incident date, medical reports attached to the Amended Complaint do not indicate that Plaintiff was denied medical treatment. For example, on August 22, 2017, the same

date that the first MRI Incident may have occurred, Plaintiff's medical records provide that he underwent a radiology exam with a different doctor. (See Docket No. 20-6, at p. 170). Plaintiff's medical records also provide that, on February 27, 2018, a few days after the second MRI Incident may have occurred, Plaintiff received counseling on how to obtain medical, dental, and mental health care. (Id. at p. 117). Therefore, because Plaintiff received medical care after both possible MRI Incident dates, Plaintiff has failed to state a claim against Defendant Rohloff. See Brown, 2018 WL 6977594, at *14 (finding no Eighth Amendment violation where "Plaintiff was not ignored, and the alleged fact that there was an error in judgment does not amount to criminal recklessness"); but see Hartsfield v. Colburn, 371 F.3d 454, 456-57 (8th Cir. 2004) (denying motion for summary judgment where it took six weeks for a pretrial detainee to receive care, and that delay caused the detainee pain and infection); Boyd v. Knox, 47 F.3d 966, 969 (8th Cir. 1995) (denying summary judgment where a prison dentist took three weeks to complete a referral sheet to an oral surgeon, after obtaining knowledge of the inmate's pain and suffering)

Accordingly, to the extent Defendants' Motion to Dismiss seeks an Order of this Court dismissing Plaintiff's Bivens claims of deliberate indifference to medical needs as alleged individually against Defendant Rohloff in his individual capacity, the Court recommends that Defendants' Motion to Dismiss, [Docket No. 63], be **GRANTED**, and that the individual Bivens claim of deliberate indifference to medical needs against Defendant Rohloff be **DISMISSED** without prejudice.

### III.    Conclusion

Therefore, based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY RECOMMENDED THAT**:

1.  Defendants' Motion to Dismiss, [Docket No. 63], be **GRANTED**, as set forth herein;

    and

2.  Plaintiff's Amended Complaint be **DISMISSED** in its entirety without prejudice.


Dated: January 31, 2022                                    s/Leo I. Brisbois
                                                           Hon. Leo I. Brisbois
                                                           U.S. MAGISTRATE JUDGE


**N O T I C E**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).